**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

| | |
|---|---|
| DEXTER MORGENSTERN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PIGEONSHUB LLC; and THE MITCHELLE LLC,<br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA") 47 U.S.C. § 227(C) ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dexter Morgenstern ("Plaintiff"), brings this complaint, by and through his attorneys and on behalf of all others similarly situated, against Defendants PigeonsHub LLC ("PigeonsHub") and The Mitchelle LLC ("Mitchelle") (together, the "Defendants") and allege upon information and belief as follows:

**INTRODUCTION**

1. Plaintiff brings this action against Defendants to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq*.

2. Defendants engage in marketing services for writers.

3. To promote its services, Defendants engage in unsolicited marketing, harming thousands of consumers in the process.

4. Between June 2024 and August 2024, despite Plaintiff's registration on the National Do Not Call Registry, Defendants sent ten (10) unsolicited telemarketing phone calls and left five (7) voicemails to Plaintiff.

5. Through this action, Plaintiff seeks damages and injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal and equitable remedies.

6. Plaintiff makes these allegations on information and belief, except for those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

7. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

8. Unless otherwise stated, all conduct engaged in by Defendants took place in the Western District of Washington.

9. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

10. Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

**JURISDICTION AND VENUE**

11. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA. Additionally, the Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (d) because: (i) there is minimal diversity; (ii) Defendants are not government entities against whom the District Court may be foreclosed from ordering relief; (iii)

1. there are more than one hundred (100) people in the putative class; and (iv) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

12. Defendants have sufficient minimum contacts with Washington and have otherwise intentionally availed themselves of the markets in Washington through the promotion, marketing, and sale of their products and services, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13. Venue is proper in this District under 28 U.S.C. §1391(b)(2) and (3) because: (i) a substantial part of the events or omissions giving rise to these claims occurred in this District; (ii) Defendant is subject to the Court's personal jurisdiction with respect to this action because Defendant conducts business in this judicial district; and (iii) Plaintiff resides in this judicial district.

**PARTIES**

14. Plaintiff is a natural person and resident of Everett, Washington, who presently resides within this judicial district.

15. Defendant PigeonsHub is a limited liability company with a principal address based out of Paramount, CA, and a mailing address in Sacramento CA. Defendant PigeonsHub "is a digital marketing and advertising firm that…provides a wide range of services, including media relations, account management, content marketing, YouTube advertising, and search engine optimization."[1]

16. Defendant Mitchelle is a limited liability company with a principal address in Sacramento, CA. The principal address is the same as the mailing address for Defendant PigeonsHub. Although the California Secretary of State shows Defendant Mitchelle's mailing address as this same Sacramento address, Defendant Mitchelle's website reports its "mailing office" as the same Paramount, CA address that Defendant PigeonsHub registered as its principal address.[2] Defendant

---

[1] https://pigeonshub.com/; (last accessed 8/20/2024)
[2] https://themitchelle.com/about-us/; (last accessed 8/20/2024)

Mitchelle markets itself as "a team of highly experienced copyright coordinators, copyright consultants, publicists, marketing consultants, book scouts and Hollywood insiders who are dedicated in reaching your goals for your book."[3] Furthermore, Defendant Mitchelle seeks to "empower authors…through self-publishing solutions."[4]

## THE TELEPHONE CONSUMER PROTECTION ACT

17. The TCPA facilitated the creation and "operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations[.]"[5]

18. Accordingly, the TCPA prohibits "any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database[.]"[6]

19. Congress empowered the Federal Communications Commission ("FCC") to issue rules and regulations implementing the TCPA.

20. The FCC recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[7]

21. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.[8]

22. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature such that plaintiff had "'clear and conspicuous disclosure' of the consequences of providing the requested consent…and having received this information,

---

[3] *Id.*
[4] *Id.*
[5] 47 U.S.C. § 227(c)(3)
[6] 47 U.S.C. § 227(c)(3)(F)
[7] *Id.*
[8] *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012).

[Plaintiff] agree[d] unambiguously to receive such calls at a telephone number the [plaintiff] designate[d]."[9]

23. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."[10]

24. In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.[11]

25. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."[12]

26. The FCC defined telemarketing as calls motivated in part by the intent to sell property, goods, or services.[13] This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.[14]

27. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.[15]

28. If a call is not deemed telemarketing, the defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.[16]

---

[9] *Id*. at ¶ 33.
[10] 47 C.F.R. § 64.1200(f)(12)
[11] See *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015)
[12] *Id*. at 820; (citing 47 C.F.R. §§ 64.1200(a)(2)(iii); 64.1200(f)(12)); See also *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd 14098 ¶ 141 (2003)).
[13] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd 14014 ¶¶ 139-142 (2003).
[14] *Id*.
[15] *Id*. at ¶ 136.
[16] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

29. The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."[17] Indeed, "[a] plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'"[18]

30. The FCC reiterated that "the TCPA and our existing rules already place the burden of proof on the texter or caller to prove that they have obtained consent that satisfies federal laws and regulations. They may not, for example, rely on comparison websites or other types of lead generators to retain proof of consent for calls the seller makes. And, in all cases, the consent must be from the consumer…the consumer's consent is not transferrable or subject to sale to another caller because it must be given by the consumer to the seller."[19]

**FACTUAL ALLEGATIONS**

31. At all times relevant, Plaintiff was an individual residing with the State of Washington.

32. At all times relevant, Defendants' principal places of business were in the State of California.

33. Plaintiff registered his phone number with the National Do Not Call Registry on March 8, 2023. Plaintiff has since received an email from the National Do Not Call Registry confirming his number's appearance on the listing.

34. Plaintiff uses his phone for residential purposes including making personal calls to family and friends in addition to making calls for personal reasons.

35. Defendants are required to check the National Do Not Call Registry before attempting to call.[20]

---

[17] *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)
[18] *Id*. (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) (emphasis original))
[19] *Id*. at ¶ 49.
[20] 47 U.S.C. § 227(c)(3)(F).

36. On June 13, 2024, Defendants called Plaintiff from phone number (323) 405-8781 and left a voicemail. In the voicemail, the caller identified as Alex Rivera, a copyright coordinator with The Mitchelle. Mr. Rivera wanted to speak to Plaintiff and solicit services related to Plaintiff's self-published book.

37. On July 12, 2024 Plaintiff received two phone calls from (323) 405-8781. Plaintiff did not accept the calls.

38. On July 12, 2024, Defendants also sent Plaintiff an email. The email stated:

> Hello Dexter Morgenstern,
>
> I hope this message finds you well!
>
> I'm **Alex Rivera**, a copyright coordinator at **The Mitchelle**, a division of **PigeonsHub** (www.pigeonshub.com). Our focus at PigeonsHub lies in marketing and advertising, with a strong emphasis on accelerating client growth through services such as media relations, account management, content marketing, YouTube advertising, and search engine optimization.
> …
> As part of our ongoing efforts, we're actively seeking published materials, and your book has been recommended to us by our book scouts within a specific genre.

(emphasis original)

39. Alongside the solicitation of potential services, Defendants' letter includes a signature block which contains the webpage www.themitchelle.com, an email address of alexrivera@themitchelle.com, and a phone number of (323) 405-8781.

40. To accompany this letter, at approximately the same time, Defendants called Plaintiff from (323) 405-8781. Again, Mr. Rivera left a voicemail asking to speak to Plaintiff about his self-published book and requesting a call-back.

41. On July 15, 2024, Plaintiff received another two phone calls from (323) 405-8781. These two phone calls were four minutes apart. Plaintiff did not accept either call. On one of these calls, Defendant left a voicemail. As before, Alex Rivera identified himself by name, said he called about Plaintiff's self-published book, and requested a call-back.

42. On August 2, 2024, and August 6, 2024, Plaintiff received an additional phone call from (323) 405-8781. On both dates, Mr. Rivera left a voicemail asking to speak to Plaintiff about his self-published book and requesting a call-back.

43. On August 28, 2024, Plaintiff received three additional phone calls from (323) 405-8781. After two of the calls, Mr. Rivera left voicemails asking to speak to Plaintiff about his self-published book and requested a call-back.

44. Defendants' calls constitute telephone solicitations because Defendants encouraged the future purchase or investment in property, goods, or services under 47 U.S.C. § 227(a)(4), i.e., attempting to sell Plaintiff marketing services for his book.

45. Defendants made the calls within this judicial district, and therefore, Defendants' violations of the TCPA occurred within this district. Upon information and belief, Defendant made other phone calls to individuals residing within this judicial district and throughout the United States.[21]

46. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted. Thus, Defendants violated 47 U.S.C. § 227(a)(5).

47. Furthermore, Defendants may not allege consent through a third-party lead generator, as the FCC has prohibited such actions.

48. Defendants' unsolicited phone calls caused Plaintiff actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion,

49. Defendants' phone calls also inconvenienced Plaintiff and caused disruption to his daily life.

---

[21] https://writerbeware.blog/scam-archive/; (detailing a warning list of companies that solicit "self-published and small press authors" in order to deliver "substandard quality" promotional services—both PigeonsHub and The Mitchelle are named as interchangeable entities) (last accessed 8/20/2024)

50. Defendants' unsolicited phone calls caused Plaintiff actual harm. Specifically, Plaintiff estimates that he spent hours investigating the unwanted phone calls including how Defendants obtained his number and the identity of the Defendants.

51. Furthermore, Defendants' phone calls took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited phone calls and voicemails like Defendants' pose a real risk of ultimately rendering the phones unusable for other purposes because of the phone's memory being taken up.

## CLASS ALLEGATIONS

52. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated.

53. Plaintiff seeks to represent a nationwide Class, pursuant to Fed. R. Civ. P. 23, defined as:

> All persons within the United States who received two or more telemarketing phone calls within a 12-month period from Defendant to said person's residential telephone, despite said person having had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendants' first call and said person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

54. Excluded from the Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants.

55. Further excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

56. Plaintiff reserves the right to modify the proposed class definitions, including but not limited to expanding the Class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

57. <u>Numerosity</u>: The members of the Class and Sub-Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals nationwide. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

58. <u>Commonality</u>: There are questions of law and fact common to the Class and Sub-Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether Defendants' sent phone calls to Plaintiff and the Class members' cellular telephones;

    b. Whether Defendants can meet their burden of showing that they obtained prior express written consent to send such telemarketing solicitations;

    c. Whether Defendants' conduct was knowing and willful;

    d. Whether Plaintiff and the Class were damaged by Defendants, and the extent of such damages;

    e. Whether Plaintiff and the Class are entitled to declaratory relief; and,

    f. Whether Plaintiff and the Class are entitled to injunctive relief.

59. If Plaintiff's claim that Defendant routinely made these telemarketing solicitations is accurate, Plaintiff and the Class members will have identical claims, capable of being efficiently adjudicated and administered in this case.

60. <u>Typicality</u>: Plaintiff's claims are typical of those of the Class, because Plaintiff received telemarketing solicitations related to his writing, and Defendants purport to solicit to many such authors and content creators.

61. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in

litigating consumer class actions similar to this action.

62. <u>Predominance</u>: Defendants have engaged in a common course of conduct toward Plaintiff and members of the Class. The common issues arising from Defendants' conduct affecting Class predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy and the prevention of inconsistent rulings.

63. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members risk inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

64. Defendants have acted and continue to act on grounds generally applicable to the Class, thereby making appropriate, final injunctive relief and corresponding declaratory relief, with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227(c)**
*(On Behalf of Plaintiff and the Class against Defendants)*

65. Plaintiff re-alleges and incorporates paragraphs 1-63 as if fully set forth herein.

66. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may,

if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

 (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

 (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

 (C) both such actions.

67. Defendant—or third parties directed by Defendant—made non-emergency telephonic solicitations to the telephones of Plaintiff and the members of the Class.

68. These calls were made without regard to whether Plaintiff or class members were on the National Do Not Call Registry. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

69. Defendant has, therefore, violated § 227(c)(5) of the TCPA by making, or directing a third party to make, two or more non-emergency telephone calls to the phones of Plaintiff and the other members of the putative Class without their prior express written consent.

70. Defendant knew that it did not have prior express consent to make these calls especially since Plaintiff told Defendant she was not interested in what Defendant was offering. The violations were therefore willful or knowing.

71. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations. Plaintiff and the class are also entitled to an injunction against future calls.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and other members of the Class, prays for relief and judgment against Defendants, and each of them, as follows:

- Class certification of this action (including as to the Class and Sub-Classes);

- Appointment of Plaintiff as Class Representative;
- Appointment of Plaintiff's attorneys as Class Counsel;
- Injunctive and other equitable relief as may be appropriate against Defendants as necessary to protect the interests of Plaintiff and other Class Members,
- An order prohibiting Defendants from engaging in unlawful and/or unfair acts described above;
- An order awarding declaratory relief against Defendants declaring Defendants' conduct as unlawful;
- Statutory damages;
- Treble damages for willful violations;
- An award of reasonable attorneys' fees and costs; and
- Any other relief the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: August 29, 2024

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ Ryan L. McBride*
Ryan L. McBride Esq. (SBN: 50751)
ryan@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523